UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | INFORMATION CR 08-320 RHK |
| Plaintiff, | (18 U.S.C. § 1956(h)) |
| v. | |
| LAWRENCE REYNOLDS, | |
| Defendant. | |

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count 1
(Money Laundering Conspiracy)
18 U.S.C. § 1956(h)

1. From in or about 2002 and continuing through in or about September 2008, in the State and District of Minnesota and elsewhere, the defendant,

**LAWRENCE REYNOLDS,**

did knowingly and willfully conspire with a person identified in this Criminal Information as "Individual A," and others known and unknown to the United States, knowingly and willfully to conduct and attempt to conduct financial transactions affecting interstate commerce, namely, transfers of the proceeds of specified unlawful activity to themselves or for their benefit, which transactions involved proceeds of a specified unlawful activity, that is, the mail fraud described herein, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity and knowing that the transactions were designed in whole and in part to conceal or disguise the nature, source, ownership and control of the proceeds of the specified unlawful activity and with the intent to promote the carrying on of

SCANNED
OCT 1 6 2008
U.S. DISTRICT COURT MPLS

FILED OCT 1 6 2008
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED____
DEPUTY CLERK'S INITIALS____

specified unlawful activity, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i), all in violation of Title 18, United States Code, Section 1956(h).

2.   The defendant owned and operated Nationwide International Resources ("NIR"), a California Corporation. In or about 2002, the defendant opened a bank account in the name of NIR at First Regional Bank, a federally insured bank in California. At the request of Individual A, the owner and president of another company, Company A, the defendant began receiving funds into the NIR account at Anchor Bank for Company A. These funds were wired into the NIR account at First Regional Bank from third-party investors that loaned money to Company A. These third-party investors were advised that the funds were being sent to NIR for the purchase of consumer electronics by Company A. In fact, the defendant wired almost all of the funds back to Company A.

3.   Starting in or about 2002 until in or about September 2008, approximately $12 billion was routed through the NIR account and re-directed to the account of Company A. Multiple times each month, wire transfers were made into the NIR account. Wire transfers into the NIR account from lenders ranged from approximately $2 million to approximately $25 million. Based on an agreement with Individual A, the defendant kept a percentage of the funds run through the NIR account as a "commission." After each wire transfer into the account, the defendant, or someone working at his direction, caused a wire transfer of the funds, less a

2

commission of approximately .05 percent, from the NIR account to the account of Company A.

4.  The defendant knew that the funds wired into the NIR account came from investors that were providing loans to Company A. The defendant, Individual A and Company A made false representations to investors about NIR and the purpose of the funds wired to NIR. The defendant knew that the wire transfers to the NIR account were purported to be for the purchase of merchandise from NIR by Company A. The defendant, Individual A and Company A provided false purchase orders to investors to make it appear that Company A had purchased merchandise from NIR. The defendant knew that Company A made no purchases of merchandise from NIR. The defendant knew that the NIR account was being used by Individual A and Company A to conceal or disguise the nature, source, ownership and control of the funds and to promote Individual A's mail fraud scheme.

5.  From in or about 2002 until in or about September 2008, the defendant obtained more than $6 million for his role in the scheme. The vast majority of the fraud proceeds went to Company A and Individual A, and were then used to fund the operations of other companies owned by Individual A, to pay others who assisted in the fraud scheme, and for Individual A's extravagant lifestyle.

## Forfeiture Allegations

Count 1 of this Information is hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

As a result of the offense alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offense, and any property traceable to such property.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All in violation of Title 18, United States Code, Sections 982(a)(1) and 1956(h).

Date: October 16, 2008

FRANK J. MAGILL, JR.
United States Attorney

BY: 
JOSEPH T. DIXON, III
JOHN R. MARTI
TIMOTHY C. RANK
Assistant U.S. Attorneys

4